UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK M. MESSING,

    Plaintiff,

v.

Case No. 1:20-cv-351

Hon. Hala Y. Jarbou

PROVIDENT LIFE AND INSURANCE
COMPANY,

    Defendant.
_____/

# OPINION

This is a dispute about a long-term disability policy held by Plaintiff Mark M. Messing. Messing acquired the policy from Defendant Provident Life and Insurance Company. He has been receiving payments under the policy since 2000. In 2018, Provident determined that Messing was not disabled and refused further coverage. Messing sued, seeking a declaration that he is disabled within the meaning of the policy and thus entitled to payments. Provident counterclaimed to recover previous policy payments, asserting that Messing misrepresented his inability to work as a lawyer. Messing now seeks summary judgment dismissing Provident's counterclaim (ECF No. 44) and judgment on the administrative record (ECF No. 47). The motion for summary judgment will be granted. The motion for judgment on the administrative record will be denied and Provident's decision to terminate benefits will be affirmed.

## I. Jurisdiction

Messing asserts that the Court has jurisdiction over this case both because it involves a federal question and because the parties are citizens of different states. (Compl. ¶ 15, ECF No. 1.) The invocation of diversity jurisdiction is unnecessary. Though Messing frames the sole count in

this action as a claim for breach of contract, he alleges that Provident's denial of coverage violated section 502(a) of the federal Employee Retirement Income Security Act of 1974 (ERISA).

His claim is not for breach of contract; his claim is to enforce the policy as mandated by ERISA.[1] ERISA permits beneficiaries like Messing to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the term of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy . . . [is] pre-empted.").

Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Thus, the Court has jurisdiction over Messing's claim because it is rooted in ERISA, a federal law. The same is true for Provident's counterclaim, which is also based on ERISA. (Am. Countercl., ECF No. 24.) There is no need for the Court to analyze whether diversity jurisdiction exists in this case. *See* 29 U.S.C. § 1132(f) ("The district courts of the United States shall have jurisdiction, *without respect to the amount in controversy or the citizenship of the parties*, to grant the relief provided for in [section 1132(a)] in any action." (emphasis added)).

## II. Background

### A. Facts Relevant to Messing's Claim

In 1985, Messing, an attorney at a law firm, applied for a disability insurance policy. (ECF No. 38-4, PageID.1051.)[2] The policy would provide payments to Messing if he became totally

---

[1] In a prior action in the Western District of Michigan, then-District Judge David W. McKeague held that the policy in question "qualifie[d] as an employee welfare benefit plan within the meaning of" ERISA. (Mem. Op., ECF No. 1-2.)

[2] The entire administrative record is on the docket. (ECF No. 38.) The policy at issue is attached as Exhibit A (ECF No. 38-1), while the remainder of the record is attached as Exhibit B. Exhibit B totals 2,355 pages, which exceeds the 120-megabyte size limit for documents uploaded to the electronic docket. Exhibit B is therefore broken up into

disabled, i.e. if he could not "perform the substantial and material duties" of any "occupation" in which he was "regularly engaged" at the time of disability. (Policy, ECF No. 38-1, PageID.601.) Coverage did not expire—the policy provided for payments so long as Messing remained permanently disabled. (*Id.*, PageID.602.) In his application, Messing listed his occupation as "attorney" and his "exact duties" as "practic[ing] law." (ECF No. 38-4, PageID.1051.) Provident issued the policy.

By any measure, Messing had a successful career as an attorney; he made partner and by the mid-1990s was earning almost $175,000 a year. (*See* ECF No. 38-9, PageID.1688.) But he also suffered from depression. It started out mild in 1994 but worsened over the years. (*See id.*) Messing's depression led to a hospitalization in 1997. (*Id.*) In 1998, he claimed that his depression prevented him from working as a lawyer and sought compensation under his disability policy. (*Id.*) Provident initially accepted Messing's claim but then reversed course and a lawsuit ensued. (*See* ECF No. 38-15, PageID.2491.) The case settled in 2000 and Provident began making payouts under the policy.

In February 2018, Provident reviewed Messing's file. (ECF No. 38-2, PageID.630.) Provident requested updated medical records from Dr. Laura Franseen, Messing's treating physician. (ECF No. 38-4, PageID.1170.) Dr. Franseen responded in July 2018. (*Id.*, PageID.1177.) She diagnosed Messing with "Major Depressive Disorder, recurrent, minimal to mild." (*Id.*) Messing "discontinued his psychotropic medications in early 2012 and has been stable for the most part since then[.]" (*Id.*) Dr. Franseen assigned Messing a Global Assessment

---

seventeen subparts (ECF Nos. 38-2 to 38-18). Exhibit B's subparts do not neatly correspond to individual documents in the record; thus the Court will always provide the exact ECF number (e.g. ECF No. 38-4) when citing Exhibit B. Exhibit C (ECF No. 38-19) is a privilege log.

of Functioning (GAF) score of 60 to 65[3] and noted that he could "tolerate 'normal stress,'" but cautioned that Messing's "ability to tolerate intensely or prolonged stressful situations is poor, cognitively, behaviorally, and emotionally[.]" (*Id.*, PageID.1178.)

Reviewers at Provident were unsure whether Dr. Franseen believed that Messing remained unable to practice law due to his depressive disorder. (*Id.*, PageID.1191.) One reviewer, Dr. Ursprung, concluded that Messing could return to work as an attorney. (ECF No. 38-11, PageID.2022.) Dr. Ursprung asked Dr. Franseen if she concurred, but Dr. Franseen said she had not focused on Messing's ability to work as a lawyer and thus declined to render an opinion. (*Id.*, PageID.2024.) So Provident hired Dr. Lemmen to conduct an independent medical exam. (ECF No. 38-14, PageID.2441.)

Dr. Lemmen reviewed Messing's medical history and various files relating to his 1998 disability claim application. (ECF No. 38-15, PageID.2484.) He then examined Messing for two-and-a-half hours on October 5, 2018, and produced a report. (*Id.*, PageID.2484-2485.) As part of the examination, Messing completed the Minnesota Multiphasic Personality Inventory-2-RF test. (*Id.*, PageID.2492.) "Other than some incidences of unhappiness, he did not endorse items consistent with mild or moderate depression" in the test; "[h]is responses [did] not suggest serious emotional or psychological dysfunction." (*Id.*, PageID.2493.) Dr. Lemmen diagnosed Messing as having "Major Depressive Disorder in remission." (*Id.*) Dr. Lemmen concluded that Messing could work as an attorney and hence was not disabled: "While there is no doubt that he has

---

[3] GAF "is a simple ratings scale from the Diagnostic and Statistical Manual of Mental Disorders for evaluating how well a person is able to function and go about their life. The scale range is from 0 to 100, where higher scores indicate greater levels of functioning." *Gilewski v. Provident Life & Accident Ins. Co.*, 683 F. App'x 399, 402 n.1 (6th Cir. 2017). A GAF score between 51-60 indicates moderate symptoms, while a score of 61-70 indicates mild symptoms. Though "[t]he GAF score is made as a standard part of all psychiatric/psychological diagnoses . . . . [it] is just one tool used by clinicians to develop the clinical picture. It cannot be used in isolation from the rest of the evidence to make a disability decision." *Id.*

historically had vulnerability to stress he is doing much better at this point in time. There is no objective evidence that he would not be able to practice as an attorney, should he desire to do so." (*Id.*, PageID.2494.)

On October 26, 2018, Provident determined that Messing was no longer disabled and thus denied further coverage under the policy. (*Id.*, PageID.2504.) In April 2019, Messing appealed the denial to Provident's appeals department. (ECF No. 38-17, PageID.2809.) He provided several documents for consideration on appeal: (1) six affidavits, written to support his original claim in 1998, from attorneys expressing their view that Messing could not handle being a lawyer; (2) three affidavits from attorneys, written in 2019, reiterating their view that Messing could not be a lawyer; (3) an affidavit from Messing explaining why his depressive disorder rendered him unable to practice law; (4) an affidavit from an insurance underwriter stating that the lifetime disability coverage offered was one reason Messing bought the policy in question; (5) Dr. Franseen's July 2018 summary; (6) a psychological assessment of Messing from March 2019, performed by Dr. Callaghan, criticizing Dr. Lemmen's finding of no disability; and (7) a "vocational rehabilitation evaluation" of Messing performed by Dr. Ancell in April 2019. (*Id.*, PageID.2818-2861.) He did not submit any new information or evaluations from Dr. Franseen.

In May, the appeals department upheld the denial. (*Id.*, PageID.2883.) Messing then brought the present lawsuit.

**B. Facts Relevant to Provident Life's Counterclaim**

After Messing filed the present lawsuit, Provident did more research. It discovered that Messing did some legal work in thirteen cases between 1999 and 2013, and that he also represented himself in divorce proceedings in 2001. Messing disputes the extent to which he was acting as an attorney, though he filed appearances in several of the cases. Per the terms of his disability policy,

5

Messing submitted many supplemental claim statements over the years. He never disclosed his involvement in any of the thirteen cases between 1999 and 2013.

The supplemental claim statements also reiterated Messing's position that he was unable to perform "substantially all" of the "duties of [his] occupation" as a lawyer. (Claims Statements, ECF No. 24-1, PageID.487, 497.) In his 1998 disability claim, Messing listed his occupational duties as: (1) "telephone contact with clients, opposing attorneys, courts and witnesses"; (2) "travel"; (3) "writing memos, correspondence"; (4) "Research—legal and factual"; (5) "Court Appearances and preparation"; (6) "interviewing clients"; (7) "depositions"; and (8) "writing briefs." (ECF No. 38-14, PageID.2386.) He also filled out an "Attorney Questionnaire" detailing his work as a lawyer. Messing indicated he performed the following work from the tasks listed in the Attorney Questionnaire: (1) travel; (2) court appearances and associated preparation; (3) filing court documents; (4) taking depositions; (5) interviewing clients; (6) legal research; (7) writing briefs; (8) participating in discovery; (9) writing letters and memos; (10) using the phone; (11) investigating cases; (12) closing files; (13) hiring and managing secretaries; (14) staying abreast of legal developments in his field; (15) discussing cases with colleagues; and (16) continuing legal education. (*Id.*, PageID.2387-2388.)

Provident contends that, in the thirteen matters from 1999-2013, Messing performed seven of eight self-reported duties in his 1998 claim submission and ten of seventeen duties he identified in the Attorney Questionnaire. He: (1) traveled; (2) communicated with clients, opposing counsel, and court staff; (3) communicated over the phone; (4) wrote memos and correspondences; (5) advised clients; (6) performed legal and factual research; (7) wrote briefs and motions; (8) appeared in court; (9) prepared cases; (10) argued a motion for summary judgment; and (11) conducted discovery. (Messing Dep., ECF No. 53-1.)

## III. Standard

### A. Judgment on the Administrative Record

"In an ERISA action brought under 29 U.S.C. § 1132(a)(1)(B) for the recovery of benefits, a federal district court reviews the administrator's denial of benefits under a *de novo* standard, unless the plan vests discretionary authority to determine eligibility or to construe the terms of the plan." *Stockman v. GE Life, Disability & Med. Plan*, No. 3:12-cv-56, 2013 WL 5441958, at *7 (S.D. Ohio Sept. 27, 2013), *aff'd* 625 F. App'x 243 (6th Cir. 2015) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989)). *De novo* review is "based solely upon the administrative record, and [the court should] render findings of fact and conclusions of law accordingly." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). Courts may not "admit or consider any evidence not presented to the administrator." *Id.* "[T]he summary judgment procedures set forth in Rule 56 [of the Federal Rules of Civil Procedure] are inapposite to ERISA actions and thus should not be [used] in their disposition." *Id.* The parties here have stipulated that the *de novo* standard applies. (ECF No. 15.)

### B. Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P 56(c)) (internal quotations omitted). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank. of Ariz. v. City Serv. Co.*, 391 U.S. 253,

288-89 (1961)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [by a preponderance of the evidence], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *City Serv.*, 391 U.S. at 289). In considering the facts, the Court must draw all inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is not an opportunity for the Court to resolve factual disputes. *Anderson*, 477 U.S. at 249.

## IV. Analysis

### A. Termination of Benefits

#### 1. Main analysis

A plaintiff seeking recovery of benefits under ERISA "must prove by a preponderance of the evidence that he was 'disabled,' as that term is defined in the [ERISA] Plan." *Javery v. Lucent Techs., Inc. Long Term Disability Plan*, 741 F.3d 686, 701 (6th Cir. 2014). Thus, the ultimate inquiry here is whether Messing, "due to . . . [s]ickness," cannot "perform the substantial and material duties of [his] occupation."[4] (Policy, PageID.601.) Because review of Messing's claim is "based solely upon the administrative record," *Wilkins*, 150 F.3d at 619, the Court does not consider his purported lawyering between 1999 and 2013 in deciding whether Provident validly determined Messing is not disabled.

The question is whether Messing's depressive disorder prevents him from performing: (1) "telephone contact with clients, opposing attorneys, courts and witnesses"; (2) "travel"; (3) "writing memos, correspondence"; (4) "Research—legal and factual"; (5) "Court Appearances and

---

[4] The terms of Messing's policy also require that he be "under the care and attendance of a [p]hysician" to be eligible for payments (Policy, PageID.601), but he argues this provision does not apply because Provident "waive[s] this requirement when continued care would be of no benefit" (ECF No. 38-4, PageID.1095). Provident does not dispute Messing's contention, so the Court will only ask whether Messing can perform the duties of his occupation in determining his disability status under the policy.

8

preparation"; (6) "interviewing clients"; (7) "depositions"; and (8) "writing briefs." (ECF No. 38-14, PageID.2386.) These duties, provided by Messing himself, largely coincide with the tasks listed in the Attorney Questionnaire furnished by Provident with regard to his original 1998 claim submission. Many of Messing's arguments center on the "own occupation" feature of the disability policy—that he must be covered if he is unable to perform the duties of a managing partner at a firm, which he was in 1998, and that Provident wrongly focused on whether he could work as an "attorney," as he listed when he originally applied for the policy. But the duties listed above were provided by Messing when he was a managing partner in 1998. In Messing's own estimation, those tasks define his occupation at the time he became disabled.

### (a) Evidence supporting Messing's claim

Onto the evidence. The following evidence supports Messing's claim: (1) six affidavits, written to support his original claim in 1998, from attorneys expressing their view that Messing could not handle being a lawyer; (2) three affidavits from attorneys, written in 2019, reiterating their view that Messing could not be a lawyer; (3) an affidavit from Messing explaining why his depressive disorder rendered him unable to practice law; (4) a psychological assessment of Messing from March 2019, performed by Dr. Callaghan, criticizing Dr. Lemmen's finding of no disability; (5) a "vocational rehabilitation evaluation" of Messing performed by Dr. Ancell in April 2019; and (6) the fact that Messing received coverage under the policy for nearly twenty years. (ECF No. 38-17, PageID.2818-2861.)

An "earlier payment of [long-term disability] benefits does not operate as estoppel, but is a circumstance that weighs against the propriety of . . . discontinu[ing] those payments." *Rabuck v. Hartford Life & Accident Ins. Co.*, 522 F. Supp. 2d 844, 872 (W.D. Mich. 2007) (citing *McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586, 589 (8th Cir. 2002)). Hence, Provident's prior payments are relevant and favor Messing, but are not dispositive. Provident derides the many

attorney affidavits as irrelevant. The Court believes their opinions carry some guiding value. However, the Court agrees with Provident's argument that the principal function of such evidence is to demonstrate that litigation is a stressful occupation. Provident concedes that Messing's former job is a stressful one. Thus, in the absence of any serious dispute about the stressful nature of litigation, the attorney affidavits bear significantly less weight. Messing's self-assessment is also relevant, but must be conditioned by the opinions of the various medical professionals in the record who examined him. *See Rabuck*, 522 F. Supp. 2d at 874 ("The claimant's . . . [statements] may not be simply dismissed as being 'subjective exaggerations,' particularly when the individuals purportedly making that credibility determination 'never met or examined' the claimant." (quoting *Calvert v. Firstar Fin., Inc.* 409 F.3d 286, 297 (6th Cir. 2005))). The Court will weigh Dr. Callaghan's and Dr. Ancell's findings below, as they directly relate to Dr. Lemmen's report.

### (b) Evidence supporting Provident's denial

Dr. Lemmen's report is the strongest evidence against Messing's claim of continuing disability. After a lengthy examination and analysis of a test taken by Messing, Dr. Lemmen concluded that Messing's depression was in remission and that his depressive disorder would not prevent him from working as an attorney. Messing attacks Dr. Lemmen's report from several angles. He claims the report fails because it does not focus on whether Messing can perform the exact duties of his occupation. Dr. Lemmen does not say whether Messing can write briefs, but does opine that he can work as an attorney, and, during the examination, Messing specifically mentioned that he used to be a trial attorney. The report adequately addresses the material issues.

That is especially so because Dr. Lemmen diagnosed Messing as having depression in remission, i.e., no longer experiencing symptoms of his depressive disorder. If Messing is not depressed, why should the report analyze his ability to perform specific tasks that he says are hindered by depression? Messing says the report ignores the core issue—he is not literally
10

incapable of, say, calling a client on the phone; the problem is that he would sink back into debilitating depression if he litigated on an ongoing basis as a career. But Dr. Lemmen acknowledges Messing's "historic[] . . . vulnerability to stress," and concludes that this vulnerability no longer presents a disabling barrier to the practice of law. Messing further contends that the report's analytic deficiencies render Dr. Lemmen unqualified to testify as an expert under Rule 702 of the Federal Rules of Evidence. Messing's ERISA claim requires the Court to review the administrative record on which Provident based its denial of benefits. *See Black v. Long Term Disability Ins.*, 582 F.3d 738, 746 n.3 (7th Cir. 2009) ("The Federal Rules of Evidence . . . do not apply to an ERISA administrator's benefits determination, and we review the administrative record[.]"). This is not a trial and Dr. Lemmen is not a witness. Messing's argument on this front is meritless.

Finally, Messing says Dr. Lemmen's report should not be trusted because he was paid by Provident and is therefore biased. The idea is that benefits plans would like to pay out less money and so repeatedly retain medical professionals who will review a claim of disability more harshly—there is an obvious conflict of interest. It is a legitimate concern: "the Supreme Court has observed that, 'Physicians repeatedly retained by benefits plans may have an incentive to make a finding of "not disabled" in order to save their employer[s] money and preserve their own consulting arrangements.'" *Rabuck*, 522 F. Supp. 2d at 872 (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003)). Courts should consider financial incentives when reviewing an independent medical examination in cases such as this one. *See id.*

Messing presents no evidence that Dr. Lemmen has been frequently hired by Provident. As such, *Rabuck*, where the court found a "significant and ongoing relationship" between the benefits plan and medical examiner, does little to help Messing. *Id.* Dr. Lemmen's report seems

11

reasonably measured and his diagnosis of "depression in remission" is not a significant departure from Dr. Franseen's most recent diagnosis of "depression, mild to moderate." The Court sees no cause for elevated concerns about conflict of interest. *Accord Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 663 (6th Cir. 2013) ("[T]his court has given greater weight to the conflict-of-interest factor when the claimant 'offers more than conclusory allegations of bias.'") (quoting *DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 445 (6th Cir. 2009)).

Dr. Callaghan's report, which criticizes Dr. Lemmen's report, is ultimately unconvincing. Dr. Callaghan reviewed treatment notes from Dr. Franseen, Dr. Lemmen's report, and conducted his own interview of Messing in March 2019. (ECF No. 38-17, PageID.2851.) He agrees with Dr. Lemmen that Messing's depression is in remission. (*Id.*, PageID.2852.) But Dr. Callaghan concludes Messing cannot return to work as an attorney, finding that the only reason his depression is in remission is because he no longer has a stressful job. Compared to Dr. Lemmen's report, however, Dr. Callaghan's report is perfunctory (about a page-and-a-half long) and provides little explanation for its conclusions. Other than reviewing notes and conducting an interview, Dr. Callaghan performed no tests and did not assign Messing a GAF score.

Now it is Provident's turn to assert a conflict of interest. Provident questions Messing's decisions to leave Dr. Franseen out of the appeal process and to meet with Dr. Callaghan instead. It also cites a Seventh Circuit decision explaining the risk of physicians taking a patient's statements at "face value" in these circumstances due to the possibility that benefits "applicants are exaggerating in an effort to win benefits[.]" *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004).

But Messing does not say dramatically different things to Dr. Callaghan compared to his interview with Dr. Lemmen. From the record, it appears that Messing has consistently reported

progress on his mental health and has equally consistently expressed concerns about relapse if he were to return to work. The real difference is that Dr. Callaghan gave more weight to Messing's statements than Dr. Lemmen did. In the abstract it is obvious that the parties have competing financial incentives here: Messing would like to receive benefits, and Provident would like to deny them. But Provident points to no evidence indicating that Messing is any more influenced by his financial incentives than Provident is by its own. It is certainly odd that Messing did not seek additional input from Dr. Franseen—who has been treating him for years—after his benefits were terminated. That will be addressed below.

Over all, the Court finds the evidence from Dr. Franseen actually cuts against Messing. In her 2018 summary, Dr. Franseen refused to opine on whether Messing could return to work as an attorney, stating her treatment had not focused on occupational matters. On its own, this might seem neutral, or even slightly favorable to Messing since the summary notes his poor "ability to tolerate intensely or prolonged stressful situations[.]" (ECF No. 38-4, PageID.1178.) But just a year earlier, Dr. Franseen told Provident that Messing "must continue to avoid high stress situations and *occupations*." (ECF No. 38-2, PageID.630 (emphasis added) (internal quotation marks omitted).) In 2017, Dr. Franseen was of the opinion that Messing had to avoid high-stress occupations; in 2018 she had no opinion at all. Her change in views is unexplained, but the Court finds it highly significant that Dr. Franseen failed to reiterate her opinion from 2017.

Thus, Messing's decision to not request further input from Dr. Franseen is questionable. She treated his depression for years and, based on the record, had previously supported his claim of disability. Then, during the review process in 2018, Dr. Franseen gave moderately unsupportive answers to Provident's questions. Messing sought no clarification or additional opinions from Dr. Franseen. Perhaps that is because, according to Dr. Franseen, her treatment did not focus on

13

occupational issues. But then why did she ever give an opinion on Messing's ability to work? There is some basis for Provident's suspicions regarding Messing's failure to follow up with Dr. Franseen during the appeal process.

### (c) Neutral and irrelevant evidence

Finally, the Court turns to evidence which is neutral or irrelevant. On appeal, Messing provided an affidavit from an insurance underwriter stating that the lifetime disability coverage offered was one reason Messing bought the policy in question. (ECF No. 38-17, PageID.2848.) The affidavit is irrelevant because it has no bearing on whether Messing's depressive disorder prevents him from performing the self-defined tasks of a trial lawyer. This evidence appears to tie into Messing's argument that the Court should follow the general legal principle of construing ambiguous provisions in insurance policies in favor of the insured and account for the features of this particular policy that provide more favorable terms and protections to Messing compared to standard ERISA plans. None of that can overcome the central inquiry behind Messing's lawsuit: whether he is disabled within the meaning of the policy.

In April 2019, Dr. Ancell produced a "vocational rehabilitation evaluation" opining that Messing could not "practice law based on his training, experience and ongoing diagnosis and restrictions." (*Id.*, PageID.2860.) But Provident "was not required" to analyze vocational expert analysis; "[v]ocational expert testimony . . . has no relevance to long-term disability claims . . . where the question is whether [the plaintiff] is able to return to his former position based on the medical evidence." *Gilewski*, 683 F. App'x at 408 (collecting cases).

Examining the administrative record and reviewing *de novo*, the Court concludes that Messing has failed to show by a preponderance of the evidence that he is disabled within the meaning of the policy at issue. In the Court's view, the most important evidence is Dr. Lemmen's report, Dr. Callaghan's report, and Dr. Franseen's conduct. Dr. Callaghan's perfunctory report

does not outweigh Dr. Lemmen's findings. Dr. Franseen previously opined that Messing could not handle stressful occupations, but declined to reiterate that position in 2018 when directly asked whether she placed any restrictions on Messing's ability to work.

### 2. Miscellaneous arguments

Before moving on to the summary judgment motion, the Court will briefly address some unsuccessful arguments made by Messing that do not neatly fit into the analysis above.

Messing relies heavily on *Heffernan v. UNUM Life Insurance Company of America*, 101 F. App'x 99 (6th Cir. 2004). *Heffernan* is not helpful here. In *Heffernan*, the Sixth Circuit found that the defendant irrationally denied benefits when it determined the plaintiff, a litigator, was not disabled because she could perform the tasks of a litigator if she found a lower-stress job environment. *Id.* at 106-07. The court stated that "[l]itigation is an inherently stressful occupation" and that the suggestion "that a litigation attorney who is prone to stress-induced mental illness might be able to function in an employment environment with less stress is akin to observing that a tight-rope walker with acrophobia would do well to avoid high places." *Id.* The Sixth Circuit is, of course, correct. But this case turns on a different issue. Neither Provident nor Dr. Lemmen assert that litigation is not stressful, or that it is possible to litigate in a low-stress way. Instead, Provident based its denial on the determination that Messing is capable of handling the very real stresses associated with being a litigator.

Messing also points out that he is in his sixties and has not really practiced law in twenty years—he contends he could not find work as a lawyer even if he returned to the profession. He argues that this weighs in favor of finding he is disabled because an inability to work can result from a combination of ailments. Messing is correct that multiple ailments may be debilitating such that it is inappropriate for a benefits plan to view individual problems in isolation when making a disability determination. *See James v. Liberty Life Assur. Co. of Boston*, 984 F. Supp. 2d 730, 740

(W.D. Mich. 2013) (benefits plan must "fully and fairly consider[] the potentially disabling impact of the combined effects of [the plaintiff's] multiple medical conditions"). But Messing's age and time out of practice are not medical conditions that prevent him from performing the duties of his occupation. Rather, they are factors that affect his employability, i.e., his ability to find a job. That is a genuine concern, but it does not bear on the question to be answered here: is Messing *capable* of doing the work of an attorney?

### B. Provident's Counterclaim for Restitution

After Messing filed the present lawsuit, Provident did some research. It discovered that Messing had occasionally done legal work and appeared in court during the same years in which he was receiving disability benefits for his inability to operate as a lawyer. Provident construes this as evidence that Messing was not disabled. It says he was required to disclose his conduct but did not. Provident asks the Court to return payments made to Messing because he was not actually disabled within the meaning of the policy and thus not entitled to benefits.

Messing raises several arguments in his motion for summary judgment on Provident's counterclaim. He successfully contends that Provident has failed to demonstrate reliance, so the Court will focus its analysis on that issue alone.

As an initial matter, Provident challenges the legal test for its claim offered by Messing. Messing's arguments appear rooted in state law, whereas ERISA governs Provident's request for restitution. Fair enough. But the test proposed by Provident, taken from the Restatement of Restitution as suggested by the Supreme Court, still requires Provident to show that Messing's purported misrepresentations *induced* benefits payments. (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., ECF No. 53, PageID.3164-3165 (citing *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Ben. Plan*, 577 U.S. 136, 142 (2016); Restatement of Restitution §§ 28(a)-(b)).) Hence, the parties agree that to succeed on its counterclaim, Provident must show it would not have made

benefits payments if Messing had disclosed his occasional lawyering when filing supplemental claims.

A party is entitled to summary judgment if he can show that the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex*, 477 U.S. at 323. Messing says Provident has failed to produce evidence showing inducement/reliance. He is correct. Citing deposition testimony, Provident counters that its employees would have reviewed Messing's disability status had they known that he was occasionally performing legal work. (*See* Crowley Dep., ECF No. 53-6, PageID.3334.) But reviewing Messing's file is not the same as terminating benefits. The former could certainly result in the latter, but Provident does not sincerely try to draw the connection. When, exactly, did Messing stop being disabled under the terms of the plan? Provident does not say.

It is Provident's burden to show that it would have ceased benefits payments had it known about Messing's lawyering. That is what inducement means. Provident has not produced evidence speaking to this essential element of its restitution claim. Messing is entitled to summary judgment.

Provident offers a second theory of liability: equitable lien by agreement. Annual supplemental claims forms, signed and submitted by Messing between 2010 and 2017, contain the following language: "should my claim be overpaid for any reason, it is my obligation to repay any such overpayment." (*See, e.g.*, ECF No. 38-2, PageID.677 (2010 supplemental claim form).) Equitable liens by agreement have been allowed as a means of recouping overpayment of benefits in the ERISA context. *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 364-65 (2006). However, the repayment agreement must be part of the ERISA plan itself. *See Gilchrest v. UNUM Life Ins. Co. of Am.*, 255 F. App'x 38, 45-46 (6th Cir. 2007). There is no such repayment agreement

17

in Messing's plan; the language simply appears in his supplemental claims forms many years after he began to receive benefits.

Provident's citation to *Bosin v. Liberty Life Assurance Company of Boston*, No. 1:06-cv-186, 2007 WL 1101187 (W.D. Mich. Apr. 11, 2007) is of no help. True, it appears that in *Bosin*, the repayment agreement was distinct from the plan. *See id.* at *9. But the policy specifically mentions the repayment agreement and calibrates benefits payments based on whether the beneficiary signs the optional agreement. "The policy provides that Liberty Life will reduce the disability benefits . . . that it estimates are payable . . . unless the Covered Person signs a reimbursement agreement under which he agrees to repay Liberty Life for any overpayment[.]" *Id.* at *9. There is no indication that benefits coverage in the policy at issue here was in any way conditioned on Messing signing a repayment agreement. Provident may not seek an equitable lien by agreement here.

## V. Conclusion

For the foregoing reasons, Messing's motion for judgment on the administrative record will be denied and Provident's decision to terminate benefits will be affirmed. Messing's motion for summary judgment on Provident's counterclaim will be granted. An order and judgment will enter consistent with this opinion.

Dated: July 7, 2021 /s/ Hala Y. Jarbou
HALA Y. JARBOU
UNITED STATES DISTRICT JUDGE