UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK M. MESSING,

    Plaintiff,

v.

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY,

    Defendant.

_____/

Case No. 1:20-cv-351

Hon. Hala Y. Jarbou

## OPINION

Plaintiff Mark M. Messing sued Defendant Provident Life and Accident Insurance Company seeking reinstatement of his benefits under a long-term disability insurance plan. Plaintiff has succeeded on both his claim and Defendant's counterclaim. Before the Court is Plaintiff's motion for an award of costs, attorneys' fees, interest, a sum certain money judgment, and an order requiring Defendant to satisfy the judgment and continue to pay benefits owed (ECF No. 64). For the reasons stated below, the Court will grant in part and deny in part the motion.

### I. COSTS

Plaintiff requests costs of $8,875.93 in this action. These requested costs include, for example, the fees of several experts, filing fees, deposition transcript fees, travel expenses, and "[r]esearch, technology, copying, and postage expenses." (Bill of Costs, ECF No. 65-5.) ERISA allows for the award of reasonable attorneys' fees and costs. "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). ERISA is silent as to what costs other than attorneys' fees the Court may allow.

28 U.S.C. § 1920 provides a separate basis for awarding costs to a prevailing party. Such costs include "fees of the clerk and marshal," fees for "transcripts necessarily obtained for use in the case," "fees and disbursements for printing and witnesses," "the costs of making copies of any materials where the copies are necessarily obtained for use in the case," "docket fees," and compensation of "court appointed experts." *Id.*

**A. 28 U.S.C. § 1920**

Although Plaintiff seeks costs under § 1132(g)(1), Defendant does not object to certain costs awarded under § 1920. Of the costs claimed by Plaintiff, § 1920 allows for and Defendant does not object to awarding: the district court filing fee ($400); the Federal Bar Association fee for mediation ($25); the fees associated with the depositions of Crowley ($629.39), Larson ($840.78), and Messing ($1,133.17); and the Sixth Circuit filing fee ($505). The Court finds these costs to be reasonable. However, for the reasons stated below, the Court will not award the remaining costs listed in Plaintiff's bill of costs under § 1920.

Subsection 1920(3) allows for the recovery of "[f]ees and disbursements for . . . witnesses." These witness costs, however, are limited to the scope of 28 U.S.C. § 1821. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 440-41 (1987). Section 1821 authorizes per diem and mileage for witnesses in the context of court attendance or depositions; it does not authorize recovery for professional services or expert retainer fees. Therefore, Dr. Ancell's professional services fee, the expert fees of Dr. Callaghan and Dr. Hoerneman, and Dr. Hoernman's expert retainer fee will not be awarded under § 1920.

These fees likewise do not fall under Subsection 1920(6). Subsection 1920(6) provides for the recovery of compensation for court-appointed experts. Because Dr. Hoernman was not appointed by the Court, his fees will not be awarded under this subsection. *See L&W Supply Corp. v. Acuity*, 475 F.3d 737, 741 (6th Cir. 2007) ("[E]xpert witness fees may not be taxed as costs at a

2

court's discretion under Rule 54(d) because § 1920 does not provide for them."). Although not labeled as such, the fees for Dr. Callaghan and Dr. Ancell's assessments and professional services fit most closely as experts who were not appointed by the Court. Therefore, their fees will also not be awarded under this Subsection.

Subsection 1920(4) allows for the recovery of copying costs of "any materials where the copies are necessarily obtained for use in the case." "When taxing these costs, the court must exercise its discretion and only allow taxation of costs for materials 'necessarily obtained for use in the case' in an amount that is reasonable." *Hall v. Ohio Educ. Ass'n*, 984 F. Supp. 1144, 1146 (S.D. Ohio 1997) (quoting 28 U.S.C. §1920). In order to recover copying costs, "a party must provide 'information about what was copied or how the copies were used.'" *Elsivier, Inc. v. Norfolk S. Ry. Co.*, No. 3:19 CV 160, 2020 WL 13469582, at *2 (N.D. Ohio July 14, 2020) (quoting *Hall*, 984 F. Supp. at 1146).

Plaintiff has provided a verified bill of costs, with a line item for "research, technology, copying, and postage expenses" in the amount of $1,457.05. Although the bill of costs shows that this total was incurred on September 12, 2020, the Court will assume the charge accrued over the full course of the litigation. Even so, the Court cannot verify what materials were copied, what portion of the total charge was allotted for copying as opposed to research, technology, or postage, or whether the copying charge was reasonable. *See Elsivier*, 2020 WL 13469582, at *2 ("This Court therefore cannot determine whether the duplication expenses were reasonable or necessary to the litigation -- meaning the request for duplication costs must be denied."); *Sublett v. Green*, No. 5:17-CV-116-TBR, 2020 WL 438931, at *2 (W.D. Ky. Jan. 28, 2020) (denying an award of copying expenses because plaintiff did "not describe what he photocopied or how the photocopies were used").

Finally, Plaintiff also claims other costs beyond what are allowed by § 1920, including, for example, travel expenses of his attorney, the cost of overnighting a package to Dr. Ancell, Thompson Reuters materials, and the cost of private mediation.  *See Wyandotte Sav. Bank v. N.L.R.B.*, 682 F.2d 119, 120 (6th Cir. 1982) (attorney travel expenses not recoverable under Section 1920); *Hadix v. Johnson*, 322 F.3d 895, 900 (6th Cir. 2003) (noting that postage is "not . . . within the meaning of [Section 1920]"); *accord Hall*, 984 F. Supp. at 1147 ("Indeed, the overwhelming weight of authority have declined to award costs for courier services, postage, telephone, or fax charges.").  The Court will not award these costs under § 1920.

In sum, under § 1920, Plaintiff is entitled to the costs of the district court filing fee; the Federal Bar Association fee for mediation; the fees associated with the depositions of Crowley, Larson, and Messing; and the Sixth Circuit filing fee.

**B. 29 U.S.C. § 1132(g)(1)**

For any costs the Court has not awarded in the previous section, the Court will consider whether to award them under § 1132(g)(1).  Plaintiff asserts that these costs are awardable under ERISA "if such expenses are reasonable and necessary[] and are typically billed to clients under prevailing practice in the jurisdiction."  (Pl's Reply Br. 15, ECF No. 70.)

In support of this argument, Plaintiff cites *Schumacher v. AK Steel Corporation Retirement Account Pension Plan*, 995 F. Supp. 2d 835 (S.D. Ohio 2014).  There, the Southern District of Ohio recognized that it "may also award non-taxable costs as part of a reasonable attorney's fee under ERISA's fee-shifting statute, if such expenses are reasonable and necessary, and are typically billed to clients under prevailing practice in the jurisdiction."  *Id.* at 853 (citing *Northcross v. Bd. of Educ.*, 611 F.2d 624, 639-40 (6th Cir. 1979); *Sturgill v. UPS, Inc.*, 512 F.3d 1024, 1036 (8th Cir. 2008)).

4

Included in Plaintiff's bill of costs is a signed verification and attestation from his attorney stating

> that each item of cost and expense set forth above was actually and necessarily incurred in prosecuting this case for Mr. Messing, and each item is a cost and expense of the sort and amount which my law firm normally charges fee paying clients in the ordinary course of providing them legal services.

(Bill of Costs, PageID.3460.)  However, the Court cannot determine whether the expenses were reasonable and necessary based on this attestation and an itemized list with nothing more than brief descriptions and dollar amounts.  In other words, Plaintiff's bill of costs lacks sufficient detail from which to determine whether the requested costs were reasonable and necessary.

As to Plaintiff's expert-related costs—Dr. Ancell's professional services fee, Dr. Callaghan's assessment and review, and Dr. Hoernman's expert retainer fee—Plaintiff fails to explain what "services" are included in Dr. Ancell's professional services fee or how many hours and at what rate Dr. Callaghan charged for his assessment and review.  Plaintiff also does not explain why it was reasonable and necessary to pay Dr. Hoernman a retainer fee.

As to the travel expenses from June of 2022, Plaintiff provides no receipts or other evidence indicating who was traveling and why the costs listed were reasonable and necessary.

Finally, as to the research and postage costs, Plaintiff combines several categories of costs into one amount.  Plaintiff requests $1,457.05 for "[r]esearch, technology, copying, and postage expenses."  But, without more, the Court cannot discern what portion of the total cost was spent on research, technology, copying, or postage and when these costs were incurred.  Similarly, Plaintiff requests $168.46 for a Thompson Reuters subscription but neither demonstrates that this cost is reasonable in light of the firm's broader contract with Thompson Reuters nor explains who used the platform and for what particular research.

5

In sum, the Court declines to exercise its discretion and award Plaintiff costs under § 1132(g)(1). The Court will only award Plaintiff the costs he is entitled to under § 1920. Therefore, Plaintiff will be awarded $3,533.34 in total costs.

## II. ATTORNEYS' FEES

In order to grant attorneys' fees, the Court must first determine that the movant has achieved "some success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n.9 (1983)). Plaintiff has brought a successful suit against Defendant for recovery of disability insurance benefits under ERISA, achieving reinstatement of his long-term disability benefits and an award of payments improperly withheld. Plaintiff also successfully defended a counterclaim to recover past payments under the plan. This constitutes success on the merits.

Once the Court has determined that an award of attorneys' fees is permissible based on success on the merits, it must determine whether an award of attorneys' fees is appropriate. In the Sixth Circuit, courts examine five factors to determine whether to award attorneys' fees under ERISA:

> (1) The degree of the opposing party's culpability or bad faith; (2) The ability of the opposing party to satisfy an award of attorney's fees; (3) Whether an award of fees against the opposing party would deter others from acting in similar circumstances; (4) Whether the party requesting fees sought to benefit all participants and beneficiaries of a multiemployer plan or to resolve a significant legal question; and (5) The relative merits of the parties' position.

*Sofco Erectors, Inc. v. Trs. of Ohio Operating Eng'rs Pension Fund*, 15 F.4th 407, 433 (6th Cir. 2021) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. 888 Corp.*, 813 F.2d 760, 767 (6th Cir. 1987)). The Supreme Court in *Hardt* signaled the transition of the five factors from mandatory to advisory. *Hardt*, 560 U.S. at 255 n.8 (2010) ("We do not foreclose the possibility that once a claimant has satisfied this requirement, and thus becomes eligible for a fees award under

6

§ 1132(g)(1), a court *may consider* the five factors adopted by the Court of Appeals . . . in deciding whether to award attorney's fees." (emphasis added)). Although consideration of the five factors is not required, "it still has vitality in helping courts determine whether or not to award fees to a party that achieves some degree of success on the merits." *Ciaramitaro v. Unum Life Ins. Co. of Am.*, 521 F. App'x 430, 437 (6th Cir. 2013) (internal citations omitted). "'No single factor is determinative, and thus, the district court must consider each factor before exercising its discretion.'" *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 529 (6th Cir. 2008) (quoting *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642-43 (6th Cir. 2006)). The Court will consider each of the five factors below.

### A. Degree of Opposing Party's Culpability or Bad Faith

Plaintiff argues that Defendant "engaged in 'an inadequate review of' Messing's claim and 'otherwise acted improperly' in cutting off his benefits." (Pl.'s Br. in Supp. 3, ECF No. 65.) He first argues that Defendant is culpable because it lost or destroyed records from prior litigation between the parties. The records of the prior litigation label Plaintiff as a "trial attorney." In the present litigation, Defendant labeled Plaintiff as an "attorney."

This change in label, however, does not demonstrate Defendant's culpability or bad faith. The Sixth Circuit, on appeal, specifically disavowed any significance of the label. "We need not fret over the differences between the meaning of 'personal injury trial attorney' and 'attorney' because the Plan requires that we focus our analysis on what *duties* Messing performed, not what title he held." *Messing v. Provident Life & Accident Ins. Co.*, 48 F.4th 670, 680 (6th Cir. 2022) (emphasis in original). Moreover, Plaintiff's own expert labeled him as an "attorney," as opposed to a "trial attorney." *Id.* Even if a direct causal link were found between Defendant's loss of records and their use of a different label for Plaintiff, that loss of records is not culpable behavior.

7

Plaintiff next argues that Defendant is culpable or acted in bad faith by inadequately reviewing his claim. As an initial matter, "the necessary degree of culpability is not established by the fact that a defendant has been found liable." *Gard v. Blankenburg*, 33 F. App'x 722, 732 (6th Cir. 2002). Instead, the Sixth Circuit has found culpability "where the administrator terminated benefits based primarily on the opinions of doctors employed by the company's own claim department." *Gaeth*, 538 F.3d at 530 (citing *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 809-10 (6th Cir. 2002)). In *Hoover*, the physician was not only employed by the plan administrator but also neither examined the plaintiff nor considered evidence suggesting that he was disabled. *Hoover*, 290 F.3d at 809. This was not the case here.

Defendant terminated Plaintiff's benefits after review and/or consultation by four different professionals—Dr. Franseen, Dr. Ursprung, Dr. Lemmen and Dr. Callaghan. Dr. Franseen opined that "[Plaintiff] is better able to tolerate 'normal stress' nowadays," but declined to give an opinion on whether Plaintiff could return to his former duties. (Franseen Rep., ECF No. 38-17, PageID.2849.) Dr. Ursprung reviewed Dr. Franseen's report and believed, based on Plaintiff's record, that he "is not psychiatrically precluded from returning to work[.]" (Letter to Dr. Franseen, ECF No. 38-11, PageID.2022.) Dr. Ursprung also found that Plaintiff's "current functioning and level of treatment is inconsistent with an impairing psychiatric condition." (*Id.*) Dr. Lemmen— an independent medical expert hired by Defendant—conducted a two-hour interview with Plaintiff and produced a ten-page report detailing his findings. (*See* Lemmen Rep., ECF No. 38-15.) Dr. Lemmen ultimately concluded that "[t]here is no objective evidence that [Plaintiff] would not be able to practice as an attorney." (*Id.*, PageID.2494.) Dr. Callaghan, on the other hand, expressly disagreed with Dr. Lemmen's "findings that there is no objective evidence that [Plaintiff] would not be able to return to practice as an attorney," and stated that Plaintiff "clearly remains disabled

8

to tolerate the stress associated with work as an attorney." (Callaghan Rep., ECF No. 38-17, PageID.2852.)

In deciding to terminate Plaintiff's benefits, Defendant also considered two other pieces of evidence. First, Plaintiff introduced affidavits from three attorneys. "To varying degrees, these affidavits state that lawyering is a stressful occupation, that [Plaintiff] lacks the ability to deal with stress, and that [Plaintiff] has lost the skills to return to the practice of law after a 20-year hiatus." *Messing*, 48 F.4th at 680. Second, Defendant considered evidence in the administrative record that Defendant had practiced law while disabled. *Id.* at 681. Defendant did not act culpably or in bad faith when it incorrectly weighed the reports of these various experts, affidavits, and outside information.

Finally, Plaintiff argues that Defendant "filed a meritless counter-claim to try to recover 18+ years of benefits it voluntarily paid," showing bad faith. (Pl.'s Br. in Supp. 6.) Although Defendant was unsuccessful on its counterclaim at both the district and circuit court levels, the Sixth Circuit noted on appeal that "[w]hether a party must prove inducement when seeking recovery for overpayment of benefits in an ERISA action seems to be an unanswered question in the Sixth Circuit." *Messing*, 48 F.4th at 683. If one of Defendant's theories of recovery remained unanswered in this Circuit at the time of filing, it is difficult to argue that filing the counterclaim evidenced culpability or bad faith.

Moreover, in filing its counterclaim, Defendant relied on "thirteen instances of [Plaintiff] performing legal services for others, and evidence that he represented himself in divorce proceedings in 2001. In these representations, [Plaintiff] performed a broad array of legal services[.]" *Id.* at 677. This evidence provides some basis for Defendant's counterclaim. The fact that this Court and the Sixth Circuit decided against Defendant on its counterclaim is not enough

9

to find culpability or bad faith. After all, "[s]imply making a losing legal argument is not enough to trigger the obligation to pay fees under 29 U.S.C. § 1132(g)(1)." *Warner v. DSM Pharma Chems. N. Am., Inc.*, 452 F. App'x 677, 681 (6th Cir. 2011).

In sum, Defendant terminated Plaintiff's benefits after examination by independent medical professionals and review by multiple experts, consideration of the evidence of Plaintiff's practice of law during the period he claimed disability, and consideration of the affidavits presented by Plaintiff. Additionally, Defendant's counterclaim was not so meritless as to be considered frivolous. Defendant did not act with a sufficient degree of culpability or bad faith. As such, this factor weighs against granting attorneys' fees.

### B. Opposing Party's Ability to Satisfy an Award of Attorneys' fees

The opposing party's ability to pay an award "'was intended to be used, as a shield, to protect beneficiaries from the fear of having to pay to pursue an important ERISA claim in the event of failing to prevail.'" *First Tr. Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005) (quoting *Gibbs v. Gibbs*, 210 F.3d 491, 505 (5th Cir. 2000)). Therefore, it has limited value here, where fees are sought by a successful claimant from a plan administrator. *See Trs. of Detroit Carpenters Fringe Benefit Funds v. Patrie Const. Co.*, 618 F. App'x 246, 259 (6th Cir. 2015) ("[T]his factor is relevant 'more for exclusionary than for inclusionary purposes.'" (quoting *Warner*, 452 F. App'x at 682)). Both parties agree that Defendant is capable of satisfying an award of attorneys' fees in this case. (Pl.'s Br. in Supp. 7; Def.'s Br. in Opp'n 5, ECF No. 67.)

### C. Deterrent Effect of Award on Other Persons Under Similar Circumstances

The Sixth Circuit has held that "the deterrent effect of a fee award on other plan administrators is one that is likely to have more significance in a case where the defendant is highly culpable." *Foltice v. Guardsman Prods.*, 98 F.3d 933, 937 (6th Cir. 1996). "Honest mistakes are bound to happen from time to time, and fee awards are likely to have the greatest deterrent effect

where deliberate misconduct is in the offing." *Id.* "The key question in analyzing this third factor is therefore whether the fee award would have a deterrent effect on other plan administrators." *Gaeth*, 538 F.3d at 532.

Defendant was not "highly culpable" in incorrectly weighing the evidence of Plaintiff's disability. Even though Defendant ultimately came to the wrong decision, there was evidence to support its conclusion that Plaintiff was no longer disabled. Plaintiff again points to Defendant's actions in "losing records" and "bringing baseless counterclaims as a point of leverage." (Pl.'s Br. in Supp. 7.) For the reasons discussed above regarding the first factor, these alleged actions do not constitute "highly culpable" conduct.

However, as Plaintiff correctly argues, the published Sixth Circuit opinion from this case will provide some guidance to Defendant and other plan administrators as they weigh evidence and make future decisions regarding the termination of benefits. The Sixth Circuit has previously found that this constitutes a deterrent effect. *See Moon*, 461 F.3d at 645 (deciding this factor in favor of claimant because, "[f]or example, before terminating a plan participant's benefits, a plan administrator should ensure that the opinions upon which they rely to make their decisions to terminate are based on a thorough review of the administrative record. In addition, under certain circumstances, the opining physician's opinion should also be based upon an actual examination of the claimant"). *But see Geiger v. Pfizer, Inc.*, 549 F. App'x 335, 339 (6th Cir. 2013) (affirming a denial of attorneys' fees when "the district court acknowledged that fee awards sometimes have a deterrent effect on plan administrators who otherwise might not conduct a full and fair review, but ultimately concluded that awarding fees would not have such an effect because 'there is no evidence that Defendants are highly culpable'" (quoting *Geiger v. Pfizer, Inc.*, No. 2:10-CV-106, 2013 WL 12129294, at *3 (S.D. Ohio Mar. 27, 2013)).

11

Thus, this factor cuts both ways. On the one hand, Defendant's conduct was not highly culpable. On the other hand, however, the Sixth Circuit's published opinion in this case will provide some guidance to Defendant and other plan administrators moving forward.

**D. Conferring a Common Benefit or Resolving Significant Legal Questions Regarding ERISA**

Plaintiff neither sought to confer a common benefit on all participants or beneficiaries of an ERISA plan, nor sought to resolve a significant legal question by suing to have his benefits reinstated. To the contrary, a question of first impression was answered regarding Defendant's counterclaim, but that does not cut in favor of awarding attorneys' fees to Plaintiff.

Plaintiff argues that he "'pursued this action . . . to confer common benefits upon other similarly situated policyholders' who are also entitled to contractual lifetime disability benefits[.]" (Pl.'s Br. in Supp. 7-8.) The common benefit that Plaintiff purports to confer is that Defendant and other insurers will be required to comply with the plain language of their disability insurance policies. In other words, Plaintiff argues that he has conferred the common benefit of a deterrent effect. This cannot itself constitute a common benefit; otherwise, the fourth factor would merge with the third. *See Gaeth*, 538 F.3d at 533 (noting that "the deterrent-effect and common-benefit factors are separate inquiries").

Plaintiff also argues that he has pursued this litigation to decide important legal issues under ERISA by seeking a final judgment defeating Defendant's counterclaim. (*See* Pl.'s Br. in Supp. 8.) This argument is unpersuasive. Although a question of first impression was answered by the Sixth Circuit, the novel legal issue was resolved through Defendant's counterclaim, which is not attributable to the Plaintiff. When he filed his claim, Plaintiff did not seek to answer a question that was raised by Defendant's subsequent counterclaim.

Because Plaintiff did not confer a benefit on any plan participants or beneficiaries other than himself, or resolve a significant legal question through his claims, this factor weighs against an award of attorneys' fees.

**E. Relative Merits of the Parties' Positions**

Plaintiff asserts that the relative merits of the parties' positions weighs in his favor because he "prevailed on all of the substantial claims and counterclaims in the case[.]" (Pl.'s Br. in Supp. 8 (emphasis omitted).) He further notes that the Sixth Circuit "entered judgment in his favor without remanding for fact finding[] and dismissed the counterclaims." (Pl.'s Reply Br. 15.)

However, for the relative merits of the parties' positions to favor an award of attorneys' fees, Plaintiff must show more than simply prevailing on the merits. *See O'Callaghan v. SPX Corp.*, 442 F. App'x 180, 186 (6th Cir. 2011) (affirming denial of fees, in part, because, "[i]n disposing of the fifth factor, the district court found that [b]oth parties proffered positions that had merit. Although defendant's position was not sufficiently persuasive on the merits of this case, it certainly was not frivolous." (internal citation and quotation marks omitted)); *see also Gard*, 33 F. App'x at 733 (affirming denial of fees, in part, because "the district court concluded with respect to the relative merits of the parties' positions, that the trustees' position, although unsuccessful as to the one claim, was neither meritless nor mere harassment . . . . Defendants had every right to defend themselves vigorously and in good faith. There is nothing in the record to suggest that they stalled or otherwise prolonged this litigation unnecessarily. Defendants' position was certainly 'no more devoid of merit than that of any other losing litigant.'" (quoting *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1304 (6th Cir. 1991) (abrogated on other grounds by *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015)))).

Victory on the merits is more compelling in cases where the burden of proof is higher. For example, where a claimant is victorious under an arbitrary and capricious standard, the merits of

13

his or her claim greatly outweigh that of the plan administrators. *See, e.g.*, *Kotyk v. Ford Motor Co.*, No. 09-14604, 2011 Wl 6780643, at *3 (E.D. Mich. Dec. 27, 2011) ("This Court granted summary judgment to Plaintiff because there were no genuine issues of material fact with regard to whether Defendant had acted arbitrarily and capriciously in denying Plaintiff salaried disability benefits. Thus, the merits of Plaintiff's claim heavily outweighed the merits of Defendant's position.").

Here, Plaintiff has proved by a preponderance of the evidence that he remains disabled. In close cases, a victory under this standard is almost evenly split. Although Plaintiff was ultimately able to prove his disability by a preponderance of the evidence, the Sixth Circuit's decision does not suggest that Defendant's position was entirely without merit. Both parties' positions had merit. Therefore, the fifth factor does not weigh in favor of granting fees.

In conclusion, after considering each of the five factors, the Court declines to grant attorneys' fees to Plaintiff.[1]

### III. TAX NEUTRALIZATION

Plaintiff requests additional payment for tax neutralization to account for the fact that, because he will be receiving "4 years' worth of his taxable benefits all in [the same year], he will be pushed into a higher tax bracket[.]" (Pl.'s Br. in Supp. 10.) As support for this request, Plaintiff cites *Monohon v. BNSF Railway Company*, 623 F. Supp. 3d 990 (S.D. Iowa 2022). *Monohon*

---

[1] It is also worth noting that, even if Plaintiff were entitled to attorneys' fees, the Court would be unable to determine whether Plaintiff's requested amount is reasonable. "The starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount, which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Where the party seeking the attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Imwalle v. Reliance Med. Prods, Inc.*, 515 F.3d 531, 552-53 (6th Cir. 2008) (internal citations omitted). Here, Plaintiff has not provided sufficient evidence for the Court to determine that the proposed number of hours worked was reasonable. Litigants often satisfy this requirement by submitting itemized billing invoices, which detail how many hours were worked, by which attorney, on what date, and on what tasks. Here, Plaintiff has filed affidavits which simply attest to the total number of hours worked by each attorney or paralegal during this multi-stage litigation. These affidavits alone are insufficient.

concerned the tax implication of several years of "gap pay" to a railroad worker who was improperly terminated. *See id.* at 994-95. Plaintiff's reliance on *Monohon* is misplaced for two reasons. First, it was decided under the Federal Railroad Safety Act, not ERISA. Second, the concept of tax-neutralization has not been adopted in the Sixth Circuit.

The Federal Railroad Safety Act provides a different remedy for successful plaintiffs than ERISA. The Safety Act provides that "[a]n employee prevailing in any action under [the act] shall be entitled to all relief necessary to make the employee whole." 49 U.S.C. § 20109(e)(1). An action under ERISA, on the other hand, is "brought . . . by a participant or beneficiary . . . to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a).

In providing a payment for tax neutralization, the court in *Monohon* stated that "[t]he majority of circuit courts that have ruled on the issue have found that authority for tax gross-ups rests within the district court's broad discretion to make victims of unlawful employment practices whole." *Monohon*, 623 F. Supp. 3d at 1002. In other words, *Monohon* granted this specific remedy in the context of the Railroad Safety Act in order to make the plaintiff whole, which is different from the remedy available under ERISA to recover benefits due.

Moreover, although courts in the Third, Seventh, and Tenth Circuits have awarded tax neutralization in select cases, the Court is not aware of any instance where the Sixth Circuit has done so. Indeed, absent direction from the Sixth Circuit, district courts within the Circuit have declined to award it. *See, e.g.*, *Umfress v. City of Memphis*, No. 217CV02568SHLTMP, 2020 WL 12969188, at *3 (W.D. Tenn. Oct. 19, 2020) ("Plaintiff seeks a tax adjustment, or gross up, for her total damages. Whether a plaintiff is entitled to a gross up is the subject of legal debate and has not been settled in the Sixth Circuit. . . . The Court declines to go beyond current Sixth Circuit

precedent and award a new category of relief, especially based on basic calculations that do not take into account the complexity of the tax code."); *Taylor v. Brennan*, No. 13-CV-2216-STA, 2015 WL 3466272, at *3 (W.D. Tenn. June 1, 2015) (Because "there is an absence of case law supporting a gross-up award, and that is especially true in this circuit . . .[n]o gross-up shall be awarded."). The Court similarly declines to go beyond Sixth Circuit precedent.

Therefore, Plaintiff will not be awarded a tax neutralization payment.

## IV. INTEREST

District courts have discretion to grant prejudgment interest on unpaid benefits recovered under ERISA. *See Ciaramitaro v. Unum Life Ins. Co. of Am.*, 521 F. App'x 430, 435 (6th Cir. 2013). The Court need only find that benefits were incorrectly withheld in order to exercise its discretion in granting prejudgment interest. *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 376 (6th Cir. 2009) ("Because Majestic incorrectly withheld benefits, the district court was within its discretion to grant . . . prejudgment interest.").

On appeal, the Sixth Circuit held that Plaintiff remains disabled, which means that termination of his benefits was improper. The parties have each suggested that a 3.5% interest rate is reasonable. (Pl.'s Br. in Supp. 10; Def.'s Br. in Opp'n 15.) When considering the purposes of prejudgment interest, the Court agrees with the parties. *See Majestic Star Casino*, 581 F.3d at 376 ("An award of prejudgment interest in the ERISA context is compensatory, not punitive[.]"). Interest will be granted on any unpaid benefits, to begin accruing at the time each benefit payment became due. Prejudgment interest will not be granted on any other portion of the judgment, including the costs awarded.

## V. UNPAID BENEFITS

While this motion was pending, Plaintiff filed a notice of partial satisfaction of judgment (ECF No. 75). That partial satisfaction covered payment of all benefits, along with interest on

those benefits, due through January 26, 2023. Accordingly, Plaintiff is entitled to benefits as well as interest on the amount of benefits that has accrued as owing between January 26, 2023, and the date of judgment. Interest is to be calculated at a rate of 3.5% per year, calculated for each individual payment, accruing from the date each payment became due after January 26, 2023, until the date of judgment.

## VI. ORDER REQUIRING DEFENDANT TO CONTINUE TO PAY BENEFITS OWED

Finally, Plaintiff has moved for an order requiring Defendant to pay the amounts owed to him immediately, and to continue to pay him under the plan so long as he remains disabled under the terms of the policy and the facts. The Court's judgment in this case will be enforceable once issued. As it relates to future payments, Plaintiff's request appears to ask the Court to affirm that the terms of the long-term disability plan remain in place following the resolution of this case. No objection has been presented before the Court, and as such it will issue an order indicating that Defendant remains obligated to perform its duties in accordance with the contract between the parties.

## VII. CONCLUSION

For the reasons stated above, Plaintiff's motion will be granted in part and denied in part. Plaintiff will not be granted attorneys' fees or a tax neutralization. Plaintiff will be awarded the sum of any benefits that remain outstanding from January 26, 2023, until this date with interest as well as costs of the action in the amount of $3,533.34. Defendant will also be ordered to continue to perform its duties in accordance with the contract between the parties.

An order and judgment will enter in accordance with this Opinion.

Dated: August 25, 2023               /s/ Hala Y. Jarbou
                                     HALA Y. JARBOU
                                     CHIEF UNITED STATES DISTRICT JUDGE

17